# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**THERESA FRUSH,**
**Claimant Below, Petitioner**

**FILED**
**October 1, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-119**          (JCN: 2023010696)

**MACY'S CORPORATE SERVICES, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Theresa Frush appeals the March 1, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Macy's Corporate Services, Inc., ("Macy's") filed a response.[1] Ms. Frush did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied authorization for a referral to a neurosurgeon.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Frush submitted an Employees' and Physicians' Report of Occupational Injury or Disease dated November 25, 2022. Ms. Frush indicated that she sustained an injury to her left wrist, arm, and shoulder on November 12, 2022, when she fell and landed on her left side. The physician's section was completed by Jill Bethlehem, PA-C, and indicated an occupational injury to multiple body parts. The claim administrator issued an order dated December 20, 2022, holding the claim compensable. On February 23, 2023, the claim administrator identified the covered conditions in the claim as an unspecified sprain of the left wrist, strain of muscle and tendon of the left front wall of the thorax, and strain of the left shoulder and upper left arm.

Prior to the compensable injury, on June 18, 2019, Ms. Frush was involved in a motor vehicle accident. Ms. Frush had no radiographic evidence of an acute fracture of the

---

[1] Ms. Frush is represented by Patrick K. Maroney, Esq. Macy's is represented by Jeffrey B. Brannon, Esq.

1

cervical, thoracic or lumbar spine, and no acute intracranial abnormality. Multilevel degenerative changes in the cervical and lumbar spine, most severe at C5-C6 with moderate bilateral neuroforaminal stenosis was noted. On December 10, 2021, Ms. Frush was seen by Hussaina Saria, M.D., a neurologist, for migraine headaches. Ms. Frush acknowledged a history of migraine headaches since her early teens, and she complained of neck tension pain. Ms. Frush reported that she was seeing a neurologist at Johns-Hopkins for peroneal neuropathy and foot drop.

Following the compensable injury, Ms. Frush was seen by PA Bethlehem on December 6, 2022. PA Bethlehem indicated that the left wrist sprain, strain of the front wall thorax, and other muscle spasm had all resolved. PA Bethlehem opined that Ms. Frush needed no future treatment and could return to work without restrictions. On January 10, 2023, PA Bethlehem noted that Ms. Frush continued to complain of left upper extremity injury with pain, weakness and fatigue in her arm, and right knee pain.

Ms. Frush underwent an MRI of her left shoulder on February 15, 2023, revealing rotator cuff tendinopathy with no high-grade tear, moderate to severe degenerative changes at the acromioclavicular joint with prominent subchondral bone marrow edema, mild subacromial/subdeltoid bursitis, and complex degenerative tear of the superior labrum. On February 21, 2023, Ms. Frush followed up with PA Bethlehem, who recommended that Ms. Frush limit her left shoulder use with no repetitive movements, no overhead work and no reaching, lifting, pushing, or pulling of more than 10 pounds.

On March 16, 2023, Ms. Frush was seen by Tedric Lolis, PA. Ms. Frush was diagnosed with a degenerative labral tear of the left shoulder. On March 23, 2023, Ms. Frush was seen by John Buschman, D.O., who assessed degenerative labral tear of the left shoulder, and left shoulder sprain. Dr. Buschman's office completed a return-to-work slip noting that Ms. Frush could return to light duty work on March 23, 2023, with no lifting over 5 pounds and no overhead activity. Ms. Frush was referred to physical therapy for her left degenerative labral tear and left shoulder strain. On April 12, 2023, Dr. Buschman's office completed a return-to-work slip indicating that Ms. Frush would be off work until released by the office.

Ms. Frush followed up with Dr. Buschman on April 20, 2023, and reported that she was still having significant left shoulder pain that radiated into her chest wall. Ms. Frush was referred for an MRI of the left shoulder and was to remain off work until released by the office. On May 1, 2023, Ms. Frush underwent an MRI of the left pectoralis, revealing mild to moderate left rotator cuff tendinosis, moderate AC joint hypertrophy with abutment and flattening of the supraspinatus, multilevel degenerative changes throughout the cervical and thoracic spine with cervical disc bulge osteophyte complexes that flatten the ventral sac and apparently abutting the ventral cord, multilevel cervical spinal foraminal stenosis, mild left subacromial subdeltoid bursitis, and artifact versus edema involving the

left costochondral junctions. On May 21, 2023, Ms. Frush underwent a cervical spine MRI, revealing diffuse degenerative changes in the cervical spine, including posterior bulging of multiple discs and narrowing of the neuroforaminal openings.

On May 26, 2023, Ms. Frush followed up with Dr. Buschman for pain in her shoulder, arm, and neck, and to review her cervical spine MRI. Ms. Frush reported that she continued to have pain and she was slowly improving with physical therapy, but she was still unable to lift or carry anything significant. Dr. Buschman assessed left shoulder strain and cervical radiculopathy and he recommended a referral to a neurosurgeon for further evaluation of the multiple disc bulges causing stenosis of the cervical spinal cord.

On June 23, 2023, Ms. Frush followed up with Dr. Buschman and reported that she had made significant improvement in the last few weeks with physical therapy. A June 23, 2023, return-to-work slip completed by Dr. Buschman's office indicated that Ms. Frush would continue to be off work until released by the office. Dr. Buschman signed a Diagnosis Update dated July 21, 2023, listing Ms. Frush's primary diagnosis of a left shoulder strain with no secondary diagnoses.

Ms. Frush was deposed on September 11, 2023. Ms. Frush testified that on November 12, 2022, she was working on the pack line when she stepped backward to reach for a box and fell, landing on her left side. Ms. Frush stated that she experienced pain going from her armpit to her rib cage to her low back and in her neck. Ms. Frush testified that her past medical history included bilateral foot drop, cardiac arrest, and migraines. Ms. Frush further testified that she had undergone a CT scan because of her headaches prior to November 12, 2022; that there were no bulging discs in her neck at that time; that the MRI after her fall at work showed bulging discs in her neck; that she had not received any prior treatment for her neck; that prior to her work injury, she had not received any treatment for her left shoulder nor had she experienced any burning, numbness or weakness in her left arm; that she had a left elbow injury in 2020 that did not affect her left shoulder; and that in 1996, she was in a car accident, which caused a right thoracic injury for which she was treated and recovered.

On March 1, 2024, the Board issued an order affirming the claim administrator's order, which denied authorization for a referral to a neurosurgeon. The Board found that the request for a referral to a neurosurgeon for the neck is not reasonably required and medically necessary treatment for Ms. Frush's compensable condition. Ms. Frush now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, No. 23-43, 2024 WL 1715166, __ W. Va. __, __ S.E.2d __ (2024).

Ms. Frush argues that the Board failed to consider medical evidence establishing that a referral to a neurologist was medically related and reasonably necessary treatment for her continued symptoms related to her compensable injury. We disagree.

Here, the Board found that a referral to a neurologist is not medically related and reasonably required medical treatment for the compensable injury. The Board noted that Dr. Buschman requested a referral to a neurosurgeon for evaluation of cervical neuropathy, which is not a compensable condition in the claim. Further, the Board noted that Ms. Frush has not requested that cervical neuropathy be added as a compensable condition.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding that a referral to a neurosurgeon for evaluation of cervical neuropathy, which is not currently a compensable condition in this claim, is not medically related and reasonably required medical treatment for the compensable injury.

Accordingly, we affirm the Board's March 1, 2024, order.

Affirmed.

4

**ISSUED:** October 1, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear